IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAMELA M. SATTELBERG,

                         Plaintiff,                        OPINION AND ORDER

     v.

                                                      12-cv-898-wmc

UNITED STATES OF AMERICA,

                         Defendant.

---

In this civil action, plaintiff Pamela M. Sattelberg alleges that defendant the United States of America was negligent in maintaining an employee parking lot at a VA Hospital, causing her to fall and injure herself.[1]  The United States moves for summary judgment, arguing that (1) because plaintiff was a trespasser, defendant did not breach the duty of care owed to her; and (2) even if not a trespasser, defendant did not breach its duty of ordinary care or cause plaintiff's injuries.  (Dkt. #30.)  Because plaintiff failed to proffer sufficient evidence from which a reasonable fact finder could find implied consent for Sattelberg to enter defendant's employee parking lot, the court will grant summary judgment to defendant.

---

[1] Plaintiff also alleged a violation of Wisconsin's Safe Place statute, Wis. Stat. § 101.11, but withdrew this claim in response to defendant's motion for summary judgment.

UNDISPUTED FACTS[2]

## I. Overview of Accident

The William S. Middleton VA Hospital is located in Madison, Wisconsin and provides medical care to veterans of the United States military.  Shortly after midnight on January 24, 2012, Sattelberg was leaving the emergency room area of the VA Hospital, having taken her father there for medical treatment.  As she walked to retrieve her car from Employee Parking Lot C/D -- where she parked without authorization -- Sattelberg slipped and fell on ice or compacted snow

## II. VA Hospital Parking Policy

The VA Hospital had an approved Hospital Parking Policy, Hospital Memorandum No. 132-10-02 ("Parking Policy"), dated May 1, 2010, which was in effect on January 24, 2012.  Employee Parking Lot C/D is reserved for VA Hospital employees and VA Hospital residents only.  Sattelberg acknowledges that she was not authorized to park there, but contends that "other persons park in that lot from time to time," relying on a VA Hospital's officer log reporting other vehicles in the lot on January 21, 2012, which "are not showing up in employee/patient lists."  (Def.'s Reply to PFOFs (dkt. #59) ¶ 7.)

---

[2] From the parties proposed findings of fact, the court finds the following facts to be material and undisputed viewed in a light most favorable to plaintiff as the non-moving party.

Directional Signage leading to Employee Parking Lot C/D on the evening of January 23 and early morning of January 24, 2012, indicated that it was "employee parking":



(Declaration of Keith Bednar ("Bednar Decl."), Ex. 2 (dkt. #35-2) p.6.)

At that time, a sign on the yellow bollard gate box notified Sattelberg that she would be trespassing if parked in Employee Parking Lot C/D and could be subject to a $75 fine:

3



(*Id.* at p.7.)  While Sattelberg contends that she did not see this latter sign because it was dark out and the sign was not illuminated, a sign in the Employee Parking Lot C/D similarly advised that this lot was for "Employee Parking Only":



(*Id.* at p.9.)  Sattelberg denies seeing this sign as well.  She further contends believing that "parking was permitted in the lot in question [] after normal business hours of the hospital" because the gate to the parking lot was in the open position.  (Pl.'s Resp. to Def.'s PFOFs (dkt. #55) ¶ 11.)

Sattelberg also failed to follow various signs directing her to the VA Hospital visitor and patient parking, located on the north (front) side of the VA Hospital including:



(Bednar Decl., Ex. 2 (dkt. #35-2) p.11.)



(*Id.* at p.15.) The VA Hospital visitor parking lot includes a covered ramp with a heated sidewalk leading to the main entrance of the VA Hospital. This ramp was constructed to aid in preventing trips, slips and falls by providing a safe path for VA Hospital patients, visitors and employees to enter the VA Hospital.

Sattelberg admits that she did not park in the visitor parking lot, but contends that the signs did not *require* her to park in that parking lot.  (Pl.'s Resp. to Def.'s PFOFs (dkt. #55) ¶ 13.)  Sattelberg also contends that she has been to many hospitals in the area, and that it is common to have areas for parking for persons going to the emergency room which are separate from general visitor parking.

## III.  VA Hospital Snow Removal Policy

Defendant submits extensive, largely undisputed facts about the VA Hospital's Snow Removal Policy and, in particular, its efforts to clear snow and ice from parking lots.  (*See* Def.'s PFOFs (dkt. #32) ¶¶ 88-111, 119-127.)  Given the court's finding that no reasonable fact finder could conclude that Sattelberg had been authorized to enter Employee Parking Lot C/D, the court need not recount these facts here, other than to note the existence of the policy and of snow removal activity surrounding the date at issue.

The last significant snow event recorded in the Madison area was 3.2 inches of snow on January 20, 2012.  On January 23, 2012, the weather condition reports indicate that the temperature was above the freezing point during daytime hours, with light drizzle, light rain, mist and light snow that did not stick to the ground.  There were trace snow amounts at 5:53 p.m. and 6:10 p.m.  At the time of Sattelberg's fall, the temperature was approximately 26 degrees and conditions were clear.

**IV.  Sattelberg's January 23-24, 2013, Visit to VA Hospital**

Since 2008, Sattelberg has been to the VA Hospital on four occasions, all with her father and all visits to the emergency room.  Sattelberg testified at her deposition that she had used visitor and patient parking on the north (front) side of the VA Hospital on at least one prior occasion, but reported that the ramp was under construction at that time.

At approximately 6:30 p.m. on January 23, 2013, Sattelberg entered the VA Hospital grounds by turning left off of Highland Avenue into the ambulance entrance. Sattelberg then followed the road, on the south side of the VA Hospital, to the emergency room.  Sattelberg parked her car at the emergency room entrance and walked her father to the side emergency room door, which is near the reception desk.  Sattelberg then returned to her car and drove it down the hill away from the emergency entrance to locate the first accessible parking area, Employee Parking Lot C/D.  Plaintiff failed to follow signs directing her to the visitor parking ramp and failed to seek any directions regarding where she was permitted to park from VA Hospital staff.

Sattelberg drove past the signs identified indicating that she was parking in "Employee Parking Only."  Once in Employee Parking Lot C/D, Sattelberg parked in the first available parking stall.  Unlike the roadways, Sattelberg contends that the parking stall contained compacted snow and ice, though she could not recall the size of the compacted area.

After exiting her vehicle, Sattelberg walked carefully on a path worn in the compacted snow and ice, and returned to the emergency room by walking over the curb to the roadway and then up the roadway to the side emergency entrance.  On this walk,

Sattelberg passed a sign directing her to visitor and patient parking, though she also denies observing this sign.

The treatment of plaintiff's father in the emergency room concluded shortly after midnight on January 24, 2013, and Sattelberg walked back down to Employee Parking Lot C/D by retracing her earlier route.  Except that when Sattelberg stepped over the curb back onto the compacted ice and snow of the parking lot, she took a step or steps and then fell backward, hitting her head and losing consciousness.

Amanda Fletcher, a Medical Technologist at the VA Hospital, saw plaintiff fall and ran down the emergency room road to assist her.  Amanda Helgesen, a Certified Nursing Assistance at the VA Hospital, also saw Sattelberg fall and ran down the hill to provide assistance.  They both testified that Sattelberg fell backwards and landed near the curb.  Helgesen assisted Sattelberg into her car and drove her to the emergency room entrance where her father was waiting for her.

Both Fletcher and Helgesen observed that there was an ice patch near the curb in the parking stall where plaintiff slipped and fell.  Fletcher and Helgesen also testified that the ice patch was limited to the place where Sattelberg fell and did not cover the entire stall.  Finally, Fletcher testified that the portions of the parking lot where she had walked earlier in the day were clear of ice and snow.[3]

---

[3] Shortly after, VA Hospital Officer James Jones was informed of her fall and checked the area in Employee Parking Lot C/D where plaintiff reported falling.  Jones did not observe anything in the condition of the parking lot that struck him as needing to be reported to the foreman of the VA Hospital grounds crew.

OPINION

The Federal Tort Claim Act authorizes suits against the United States when there is analogous private person liability under the law of the place, in this instance, under Wisconsin law.  28 U.S.C. § 1346(b)(1).[4]  Defendant contends that Sattelberg was a trespasser and, as such, it simply owed her a duty to refrain from willful and wanton injury.  (Def.'s Opening Br. (dkt. #31) 25.)  Since Sattelberg does not allege, and does not argue in opposition to defendant's motion for summary judgment, that defendant acted willfully and wantonly in injuring her, the court agrees with defendant that this case turns on whether Sattelberg was a trespasser under Wisconsin law.

"A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 843, 236 N.W.2d 1, 4 (1975) (citing Restatement (Second) of Torts § 329 (1964)); *see also Grossenbach v. Devonshire Realty Co.*, 218 Wis. 633, 633, 261 N.W. 742, 744 (1935) ("One on premises without invitation, express or implied, extended by the owner, and solely for his own pleasure and convenience or purpose, in a trespasser.").

"[C]onsent may be implied from the conduct of the owner, from the relationship of the parties, or by custom." *Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co.*, 2004 WI 62, ¶ 36 n.13, 272 Wis. 2d 46, 680 N.W.2d 345 (quoting *Baumgart v. Spierings*, 2 Wis. 2d 289, 293, 86 N.W.2d 413 (1957)).  An owner's conduct may provide implied consent

_____

[4] The court has jurisdiction over this action because the Amended Complaint seeks money damages from the United States pursuant to the Federal Tort Claim Act, 28 U.S.C. §§ 2671-80.

where "a reasonable person having knowledge thereof [would] believe that the owner had given consent to come upon the premises." *Fandrey*, 2004 WI 62, at ¶ 36 n.13 (quoting *Verdoljak v. Mosinee Paper Corp.*, 192 Wis. 2d 235, 243, 531 N.W.2d 341 (Ct. App. 1995)).

While Sattelberg contends she *believed* that she had permission to park in Employee Parking Lot C/D because the gate was up and it was after hours, her subjective belief -- regardless of its sincerity[5] -- is not material to determining her legal status as a "trespasser."  Indeed, Wisconsin courts have regularly rejected similar arguments based on a mistaken, subjective belief on the part of the plaintiff that she had consent to be on the premises.  *See, e.g., McNally v. Goodenough*, 5 Wis. 2d 293, 301, 92 N.W.2d 890, 895 (1958) ("When plaintiff deviated from the direct path and turned into the vestibule at the head of the stairs he became a trespasser as a matter of law and he was a trespasser when hurt on the stairway. . . .  The fact that he did not intend to use the stairway, but was confused and did so by mistake, does not prevent its being a trespass."); *Grossenbach*, 218 Wis. at 633, 261 N.W. at 744 (finding plaintiff a trespasser when she entered boiler room of apartment building despite her mistaken belief that she was entering a locker room instead of the boiler room); *Monsivais v. Winzenried*, 179 Wis. 2d 758, 764-65, 508 N.W.2d 620, 624 (Ct. App. 1993) (finding patron of bar became a trespasser when he

---

[5] Though of no significance to the court's summary judgment ruling above, plaintiff's position that she did not see the signs marking the lot as employee parking lot strikes the court as somewhat inconsistent with her claimed belief at the time that she could park in this lot because the gate was up and because it was after normal business hours.  But for some recognition that this lot was restricted, why would plaintiff have rationalized her decision to park in the lot?

pushed a door open that he mistakenly believed lead to the bathroom and instead lead to a basement stairway).[6]

Rather than Sattelberg's subjective belief, consent turns on whether a reasonable person would believe the United States had given consent to a visitor to the VA Hospital to park in the Employee Parking Lot C/D. Based on the undisputed record, the court finds that no reasonable fact finder would conclude that the VA had given implied consent to all to park in that lot. On the contrary, there were several signs indicating that the parking lot was restricted to employee or resident parking. Moreover, there were signs directing Sattelberg to visitor or patient parking.

The fact that Sattelberg failed to observe these signs is not a defense, unless perhaps they were somehow inconspicuous, a finding the record does not permit. *See Newell v. Schultz Bros. Co.*, 239 Wis. 415, 419, 1 N.W.2d 769, 771 (1942) (affirming circuit court's finding that plaintiff became a trespasser once she "walked voluntarily from the store proper through the doorway and past the door marked 'Employes Only' into the areaway where she stepped to the left and fell down the stairs"). Nor can plaintiff establish implied consent to enter the parking lot on the simple fact that the entrance gate was up, which allowed her entry. *See Zillmer v. Orpheum Theatre Project, LLC*, 2006 WI App 78, ¶ 18, 2006 WL 559439, at *5 (Wis. Ct. App. Mar. 9, 2006)

---

[6] In *Monsivais*, the Wisconsin Court of Appeals noted that a person may not be a trespasser if such a person "is reasonably seeking directions as to the location of an intended, but unknown, destination." 179 Wis. 2d at 771, 508 N.W.2d at 627. This exception, however, does not apply "when such inquiry is not made, or where the inquiry has concluded." *Id.* Here, it is undisputed that Sattelberg did not ask for directions and, even if she had, her injury did not occur while she was in the process of seeking such instructions.

("Even though we are required under summary judgment methodology to accept [plaintiff's] testimony that the barricade was not up at the time they entered the fly loft, the nature of the fly loft area itself clearly shows it was off-limits to frequenters.").

As a last resort, Sattelberg argues that her injury was not a result of her *parking* in the lot, but rather was a result of her *walking* in the lot.  While she may not have had consent -- implied or otherwise -- to park in the lot, Sattelberg argues, that there was no similar restriction on pedestrian activities.  (Pl.'s Opp'n (dkt. #52) 1-3.)  This argument stretches the bounds of common sense.  The record shows that the *only* reason Sattelberg was in Employee Parking Lot C/D during the early hours of January 24, 2012, was to retrieve her car from that lot.  Moreover, Sattelberg has failed to point to case law or otherwise develop any argument that she had consent to enter the parking lot even as a pedestrian.  Indeed, the no trespassing sign includes a prominent **"WARNING"** that it is for "AUTOMOBILES ONLY **NO** PEDESTRIANS."  (Bednar Decl., Ex. 2 (dkt. #35-2) p.7 (emphasis in original).)

Having found that Sattelberg was a trespasser when she fell in Employee Parking Lot C/D, the only remaining issue is whether the United States breached the duty owed trespassers "to refrain from wil[l]ful and intentional injury."  *Szafranski v. Radetzky*, 31 Wis. 2d 119, 125, 141 N.W.2d 902, 905 (1966).[7]  Here, plaintiff did not allege in her complaint that the United States acted willfully and intentionally in injuring her, nor on

---

[7] As such, a land owner is "not liable for injury to trespassers, as a general rule, caused by his failure to exercise reasonable care to put his land in safe condition."  *Szafranski*, 31 Wis. 2d at 125-26, 141 N.W.2d at 905.

the undisputed facts does it appear she could.  Accordingly, the defendant's motion for summary judgment will be granted.

ORDER

IT IS ORDERED that:

1) defendant the United States of America's motion for summary judgment (dkt. #30) is GRANTED; and

2) the Clerk of the Court is directed to enter judgment in favor of defendant and close this case.

Entered this 18th day of November, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge